Filed 3/3/22  P. v. Garcia CA2/6
Opinion following transfer from Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>OSCAR ARMANDO GARCIA,<br><br>  Defendant and Appellant. | 2d Crim. No. B300163<br>(Super. Ct. No. F000270432002)<br>(San Luis Obispo County)<br><br><br>OPINION ON REMAND |

In 1998 appellant was convicted of second degree murder after a jury trial. We affirmed the judgment of conviction in an unpublished opinion. (*People v. Garcia et al.* (July 23, 2001, B126854) (*Garcia I*).) In 2019 appellant filed a petition to vacate his murder conviction pursuant to a new statute, Penal Code section 1170.95.[1]

---

[1] All statutory references are to the Penal Code.

The trial court denied the petition, and appellant appealed. We affirmed the trial court's order in a published opinion that was subsequently ordered depublished by the California Supreme Court. (*People v. Garcia* (2020) 271 Cal.Rptr.3d 206, previously published at 57 Cal.App.5th 100 (*Garcia II*).) We concluded that appellant was not entitled to section 1170.95 relief because substantial evidence in the record of conviction shows that, under current law, he could be convicted of murder based on theories of implied malice and direct aiding and abetting.

The California Supreme Court granted review (S265692). On December 29, 2021, the Supreme Court transferred the cause back to us "with directions to vacate [our *Garcia II*] decision and reconsider the cause in light of *People v. Lewis* (2021) 11 Cal.5th 952, 971-972 [*Lewis*], and Senate Bill No. 775 (Stats. 2021, ch. 551)."

We vacate our *Garcia II* decision and reverse the trial court's order denying appellant's petition. We remand the matter to the trial court with directions to issue an order to show cause and conduct a hearing as required by section 1170.95.

*Facts*

The facts are taken from the statement of facts at pages 2-5 of our unpublished *Garcia I* opinion, which was attached as "Exhibit A" to appellant's petition:

"Paso Robles 13 (Paso 13) is a criminal street gang. Mosqueda, whose moniker is 'dreamer,' was a past associate of Paso 13. Mosqueda was friendly with the members of Nameless Crew Style (NCS), a rival gang that was engaged in 'warfare' with Paso 13. . . . Paso 13 put out a 'green light' on Mosqueda, which meant that he was 'free game' to kill. [David] Rey and

2

[appellant] were members of Paso 13, and [Sergio] Ortiz associated with the gang.

" [¶]  [¶]

"During the evening of April 12, 1998, Reginald Calhoun went to the trailer park residence of Ortiz and [Monte] Weatherington.  [Appellant and other persons were present] there.  Mosqueda became the subject of conversation, and everyone was saying, 'Hey, we want to kick dreamer's ass.'

"Calhoun was paged by [Gregory] Vived[, Jr.].  Calhoun telephoned Vived, who said that Mosqueda was going to be at a party in Paso Robles. . . .

"Calhoun, [Manuel] Preciado, and [other persons, including appellant,] drove to the Paso Robles party in three cars.  Rey was the sole passenger in a car driven by [appellant].  Rey was armed with a knife that he displayed to [appellant] inside the car.  Rey put the knife in his pocket.  At the trailer park, Rey had not displayed the knife or mentioned that he possessed it.

"After parking their cars in Paso Robles, Calhoun, Preciado, and [other persons, including appellant,] walked to the apartment where the party was occurring.  Weatherington knocked on the front door.  A female opened the door, and Weatherington asked to speak to 'dreamer.'  Mosqueda came to the door and said, 'What do you guys want?'  Weatherington told him to come outside.  Mosqueda said, 'We don't want no problems here.'  Mosqueda closed the door, and another person locked it.  Calhoun picked up a potted plant and threw it through a plate-glass window.  Rey and Weatherington kicked the front door open.  Calhoun, Preciado, and [other persons, including appellant,] ran through the doorway into the apartment.  They were saying, 'Get your beating like a man,' and 'You know what

3

time it is.  You know it's up.'  Everyone inside 'just started scattering.'  Mosqueda retreated into a bathroom and tried to close the door.  Calhoun testified that he and Rey pulled Mosqueda out into the hallway, but other witnesses testified that Weatherington did the pulling.  Calhoun and [other persons, including appellant,] punched Mosqueda in the hallway.  There was 'a big commotion of bodies' and people were screaming.

" [¶]

"Mosqueda fell to the floor and was lying on his side against a wall.  [Appellant] said to Rey, 'You got a knife.  You got a knife.  Stick him.  Stick him.'  Rey stabbed Mosqueda four times in the chest.  Mosqueda crawled out of the hallway 'like a baby' on his hands and knees with blood on his face, chest, and stomach.  Rey, Vived, [appellant], Ortiz, and Calhoun were 'around him' and were punching and kicking him.  People in the background were saying, 'Leave him alone.  He's knocked out.[']  Mosqueda fell to his side.  Rey, Vived, [appellant], Ortiz, and Calhoun continued to hit and kick him.  [Appellant] said, 'Now what's up dreamer? . . .  Now you ain't talking.  You're not saying nothing now, are you?' . . .

"Later that night, Preciado, Ortiz, and Weatherington met [appellant] in a parking lot.  [Appellant] told them that Rey had stabbed Mosqueda 'penitentiary style, real quick,' and that anyone who said 'anything to the cops' would 'get bumped off' in prison.  [Appellant] said that Rey 'had got his stripes.'  This meant that Rey had earned respect from other gang members and 'was up at the top with the big boys . . . .'

" [¶]

"An expert on criminal street gangs testified that the killing of Mosqueda had benefited Paso 13 because it had 'slowed

4

down' the escalation in violence between Paso 13 and NCS and had 'put [Paso 13] back on top.'"

*Senate Bills 1437 and 775*

Section 1170.95 was added to the Penal Code by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (S.B. 1437), which became effective on January 1, 2019.  (See Stats. 2018, ch. 1015, § 4.)  In S.B. 1437 the Legislature declared, "It is necessary to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)  To achieve this goal, S.B. 1437 amended section 189 insofar as it pertains to the felony-murder rule.  (Stats. 2018, ch. 1015, § 3.)  It also amended section 188 to add subdivision (a)(3), which "eliminates natural and probable consequences liability for first and second degree murder." (*People v. Gentile* (2020) 10 Cal.5th 830, 849.)

Section 1170.95, added by S.B. 1437, gives retroactive effect to the changes in sections 188 and 189.  Effective January 1, 2022, section 1170.95 was amended by Senate Bill No. 775 (2021-2022 Reg. Sess.) (S.B. 775).  (Stats. 2021, ch. 551.)  As amended, section 1170.95 provides in relevant part, "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, . . . may file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced on any remaining counts when" certain

5

conditions apply.  (*Id.*, subd. (a).)  One of the conditions is that "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (*Id.*, subd. (a)(3).)  The petition must include a declaration by the petitioner showing that he is eligible for the relief afforded by section 1170.95.  (*Id.*, subd. (b)(1)(A).)

"[T]he court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief.  If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).)  "Within 60 days after the order to show cause has issued, the court shall hold a hearing to determine whether to vacate the murder . . . conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced . . . ." (*Id.*, subd. (d)(1).)  "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (*Id.*, subd. (d)(3).)

*People v. Lewis*

In *Lewis*, *supra*, 11 Cal.5th at pp. 971-972, our Supreme Court gave guidance to trial courts on how they should proceed in determining whether the petitioner has made a prima facie case for relief.  The Supreme Court stated:  "While the trial court may look at the record of conviction . . . to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited.  Like the analogous prima facie inquiry in habeas corpus proceedings, "'the

6

court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause.'" [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] . . . [¶] . . . In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' . . . [T]he 'prima facie bar was intentionally and correctly set very low.'" (*Ibid*.)

In section 1(b) of S.B. 775, the legislature declared that the legislation "[c]odifies the holdings of *People v. Lewis* (2021) 11 Cal.5th 952, 961-970, regarding . . . the standard for determining the existence of a prima facie case."

*Trial Court's Ruling*

The trial court ruled before *Lewis* was decided and S.B. 775 was enacted. It concluded that appellant was ineligible for relief because he had failed to make a prima facie showing that he could not presently be convicted of second degree murder because of S.B. 1437's changes to the Penal Code. The court said, "I'm taking into consideration that [appellant] was aware of the knife that was used by Mr. Rey in perpetration of the . . . stabbing; [and] that [appellant] purportedly said, 'stick him, stick him' during the stabbing or prior to the stabbing . . . ."

*We Accept the People's Concession that the Order*
*Denying Appellant's Petition Must Be Reversed*

In support of his section 1170.95 petition, appellant declared: "I was convicted of second degree murder pursuant to the natural and probable consequences doctrine . . . ." "I could

7

not now be convicted of . . . second degree murder because of changes made [t]o Penal Code section 188 . . . ." "I did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder . . . ." Nor did I act with "reckless indifference to human [life]."

In reply to the People's opposition to the petition, appellant's counsel presented a factual scenario contrary to the statement of facts in the *Garcia I* opinion: "During the assault, one of the attackers, Mr. Rey, stabbed the victim with a knife, causing death. [Appellant] had no knowledge that Mr. Rey was carrying a knife before the attack. At no point did [appellant] encourage Mr. Rey to 'stick' or 'stab' the victim. [Appellant] did not intend that the victim be killed."

The People argue that "[t]he evidence does not appear to support appellant's . . . contention . . . that he could not be convicted of murder under . . . amended section 188. The People explain: "[T]he evidence supports finding that appellant was an aider and abettor to murder with actual malice. This is not a situation where an aider and abettor had no idea of the criminal scheme he joined, nor was it a criminal enterprise where violence and death were unexpected. . . . The stabbing [of Mosqueda] . . . was not spontaneous or accidental, but occurred only after appellant's encouragement and instigation and during a seven-to-one beating of the victim. Based on this evidence, it is clear appellant was a direct aider and abettor who acted either with express malice, or at least with implied malice, i.e., he intended to perform an act he knew presented a danger to the life of another but acted in conscious disregard of that danger."

8

Nevertheless, the People concede that "such observations about the evidence in the record are insufficient to show that appellant is absolutely ineligible for section 1170.95 relief as a matter of law. Appellant's jury was instructed on the natural and probable consequences theory with respect to the murder, with the target crime of assault. [Record citation.] Neither the jury instructions nor the verdicts indicate that appellant was *necessarily* convicted of murder based on a theory of actual malice as required by . . . amended section 188 for a direct aider and abettor. The record thus shows that appellant presented a prima facie case for relief. The trial court's weighing of the evidence should have been reserved for an evidentiary hearing in accordance with section 1170.95, subdivision (d)(3)."

Based on *Lewis* and S.B. 775, we accept the People's concession. The record on appeal in *Garcia I* does not "'conclusively refute [appellant's assertions in the petition] as a matter of law.'" (*People v. Davenport* (2021) 71 Cal.App.5th 476, 481.)

*Disposition*

Our decision in *Garcia II* is vacated. On reconsideration of the cause in light of *Lewis*, *supra*, 11 Cal.5th at pp. 971-972, and S.B. 775, we reverse the order denying appellant's section 1170.95 petition. The cause is remanded to the trial court with directions to issue an order to show cause and conduct a hearing as required by section 1170.95.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

9

GILBERT, P. J.          PERREN, J.

Jacquelyn H. Duffy, Judge

Superior Court County of San Luis Obispo

_____

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri, Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.